# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASAK ARIKAN,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OR FACILITY ADMINISTRATOR, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br><br>Respondents. | Case No. 1:26-cv-03748-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART<br><br>ORDER DENYING PETITIONER'S MOTION TO EXPEDITE<br><br>(ECF No. 8) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Turkey who lawfully entered the United States on or about June 25, 2022, as a J-1 exchange visitor. (ECF No. 1 at 9; ECF No. 6-2 at 2.[1]) On October 18, 2022, Petitioner filed a Form I-539N, Application to Extend/Change Nonimmigrant Status, which was approved on December 6, 2022, and Petitioner's status was adjusted to that of an F-1 nonimmigrant student visa. (ECF No. 6-2 at 2.) The petition alleges that in or around June 2023, Petitioner enrolled in an English language program at UCEDA School in Orlando, Florida. (ECF No. 1 at 9.) On October 11, 2023, Petitioner's F-1 visa was terminated by the U.S. State Department due to failure to enroll. (ECF No. 6-2 at 3.) Petitioner subsequently married a United

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

States citizen. (ECF No. 1 at 9.) On or about March 19, 2026, Petitioner was stopped by local law enforcement while traveling to work in Utah and was subsequently transferred into U.S. Immigration and Customs Enforcement ("ICE") custody. (Id. at 10.)

On April 15, 2026, an immigration judge ("IJ") held a bond hearing and denied bond, finding Petitioner a flight risk. (ECF No. 1-2 at 19; ECF No. 6-3 at 1.) On May 5, 2026, the IJ denied Petitioner's request for a second bond hearing, finding Petitioner had not established materially changed circumstances to warrant a second bond hearing under 8 C.F.R. § 1003.19(e). (ECF No. 6-4 at 1.)

On May 15, 2026, Petitioner filed a petition for writ of habeas corpus challenging her detention on various due process grounds. (ECF No. 1 at 12–17.) On June 22, 2026, Respondents filed an untimely response,[2] and Petitioner filed a reply on July 3, 2026. (ECF Nos. 6, 7.)

**II.**

**DISCUSSION**

**A. Jurisdiction**

1. 8 U.S.C. § 1252(g)

Respondents argue that "Petitioner challenges DHS's decision to detain her during an ongoing removal proceeding, which is a category of claims explicitly barred by 8 U.S.C. § 1252(g)." (ECF No. 6 at 4.) Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

> The Supreme Court has given a "narrow reading" to § 1252(g). *AADC*, 525 U.S. at 487, 119 S.Ct. 936; *see also Regents of the Univ. of Cal.*, 591 U.S. at 19, 140 S.Ct. 1891 ("Section 1252(g) is ... narrow."). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' " *AADC*, 525 U.S. at 482, 119 S.Ct. 936 (emphasis in original) (quoting 8 U.S.C. § 1252(g)). Instead of "sweep[ing] in any claim that can technically be said to 'arise from' the three listed actions," the provision "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) (plurality opinion) (describing the holding of *AADC*).

[2] In the interest of justice, the Court has considered Respondents' untimely response.

> "There are of course many ... decisions or actions that may be part of the deportation process" not implicated by § 1252(g), "such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 482, 119 S.Ct. 936.

Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025).

The Supreme "Court has characterized § 1252(g) as a 'discretion-protecting provision.'" Ibarra-Perez, 154 F.4th at 996 (quoting Reno v. Am.-Arab Anti-Discrimination Comm. (AADC), 525 U.S. 471, 487 (1999)). In Zadvydas v. Davis, 533 U.S. 678 (2001), which concerned a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6), the Supreme Court found that of the "several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available . . . none applies here" in part because the petitioners did "not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion." Zadvydas, 533 U.S. at 687, 688. However, § 1252(g)'s jurisdictional bar covers claims challenging the government's discretionary authority to decide "whether" or "when" to execute the removal order. Rauda v. Jennings, 55 F.4th 773, 777 (9th Cir. 2022) (quoting Tazu v. Att'y Gen. United States, 975 F.3d 292, 297 (3d Cir. 2020)). Courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025).

"Though 8 U.S.C. § 1252(g), precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' this Court has habeas jurisdiction over the issues raised here, namely the lawfulness of [Petitioner's] continued detention[.]" Y.T.D. v. Andrews, No. 1:25-cv-01100 JLT SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025). Accordingly, the Court recommends finding that 8 U.S.C. § 1252(g) does not bar jurisdiction over Petitioner's claims.

///

///

2. 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)

Respondents also contend that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) independently bar jurisdiction. (ECF No. 6 at 4.)

> The INA contains a provision entitled "Exclusive means of review," which reads, in relevant part:
>
> > Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means* for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.
>
> 8 U.S.C. § 1252(a)(5) (emphasis added). The language of the statute is clear. The exclusive means to challenge an order of removal is the petition for review process.

Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012). Here, however, Petitioner is not requesting this Court to review an order of removal. Accordingly, the Court recommends finding that 8 U.S.C. § 1252(a)(5) does not bar jurisdiction over Petitioner's claims.

"The INA also contains a 'zipper clause' that consolidates all 'questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien' into a petition for review." Martinez, 704 F.3d at 622 (quoting 8 U.S.C. § 1252(b)(9)). "This statutory scheme was designed to 'limit all aliens to one bite of the apple with regard to challenging an order of removal.'" Id. (quoting Singh v. Gonzales, 499 F.3d 969, 976 (9th Cir. 2007)). Section "1252(b)(9) has built-in limits. By channeling only those questions 'arising from any action taken or proceeding brought to remove an alien,' the statute excludes from the PFR [petition for review] process any claim that does not arise from removal proceedings." J.E.F.M. v. Lynch, 837 F.3d 1026, 1032 (9th Cir. 2016). "Accordingly, claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." Id. Thus, "an immigrant c[an] challenge his . . . administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9)." Id. (citing Nadarajah v. Gonzales, 443 F.3d 1069, 1075–76 (9th Cir. 2006)). On the other hand, claims that "are bound up in and an inextricable part of the administrative process" fall within the scope of § 1252(b)(9) and must be raised

through the PFR process. J.E.F.M., 837 F.3d at 1033. Accordingly, the Court recommends finding that 8 U.S.C. § 1252(b)(9) does not bar jurisdiction over Petitioner's claims.

**B. Exhaustion**

Respondents argue that the petition should be dismissed for failure to exhaust administrative remedies. (ECF No. 6 at 1–3.)

> As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).
>
> However, because exhaustion is not jurisdictional, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Singh v. Warden, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508, at *3 (E.D. Cal. May 13, 2026).

Here, the appeal period has expired and thus, appealing to the BIA would be futile. Further, "district courts in the Ninth Circuit note that the unprecedented delays in the BIA appeals process necessarily mean that Petitioners will suffer irreparable injury if required to wait for a BIA decision before being permitted to file a habeas claim." Singh, 2026 WL 1328508, at *4 (citing Soriano v. Hernandez, No. 2:26-CV-00900-DGE, 2026 WL 969764 at *4 (W.D. Wash. Apr. 10, 2026); Scott v. Wamsley, No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025)). Accordingly, the Court recommends waiving the prudential exhaustion requirement in this instance.

**C. Bond Hearing**

In Count One, Petitioner challenges the adequacy of her bond hearing, arguing that "[d]ue process requires, at minimum, an individualized custody determination in which the Government bears the burden of demonstrating that continued detention is justified." (ECF No. 1 at 14.) "The detention of aliens during removal proceedings has long been upheld as a permissible exercise of the political branches' authority over immigration. Section 1226(a) offers substantial procedural protections to detained persons," and the Ninth Circuit has held that "§ 1226(a)'s procedures satisfy due process[.]" Rodriguez Diaz, 53 F.4th at 1193, 1213. Further, the Ninth Circuit rejected the argument that due process requires the government to justify detention under § 1226(a) by clear and convincing evidence. Id. at 1210–12. Accordingly, the Court recommends finding that Petitioner is not entitled to relief on this ground.

**D. Denial of Second Bond Hearing**

In Count One, Petitioner also challenges "the rigid and mechanical application of the 'materially changed Circumstances' standard," arguing that it "effectively deprived Petitioner of any realistic opportunity to obtain meaningful custody review." (ECF No. 1 at 14.)

"Some district courts have held that an IJ's failure to consider clear evidence of materially changed circumstances may violate a noncitizen's rights to due process, warranting habeas relief." Tavares v. US Immigr. & Customs Enf't & Removal Operations, Field Off. Dir., No. 26-CV-00222-LM-AJ, 2026 WL 1382996, at *3 (D.N.H. May 18, 2026) (citing Gimenez v. Hernandez, No. 2:26-cv-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) ("Where the only identified factor supporting bond denial—namely, a pending criminal charge—was dismissed, the factual landscape before the IJ changed in a manner directly relevant to their prior bond determination. The IJ's failure to acknowledge or engage with evidence of that change, coupled with the absence of any articulated reasoning, constitutes an abuse of discretion."); Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 774 (N.D. Cal. 2019) ("[T]he Court finds that when all of Petitioner's evidence is considered, Petitioner has demonstrated, as a matter of law, that his circumstances materially changed since his initial bond hearing.")).

///

In denying Petitioner's request for a second bond hearing, the immigration judge stated:

> Respondent is not eligible for bond. Respondent has not established materially changed circumstances to warrant a second bond hearing. 8 C.F.R. § 1003.19(e). Respondent has not persuasively established that the documents submitted in this bond hearing could not have been obtained at the prior hearing. While Respondent's husband recently filed a Form I-130 after the bond hearing, she has not established why her husband did not file a Form I-130 earlier. Further, Respondent states that she found an additional sponsor. Again, there is no indication that they could not have found the sponsor earlier.

(ECF No. 6-4 at 1.) Here, the IJ disregarded the fact that Petitioner's husband filed a Form I-130 after Petitioner's initial bond hearing because Petitioner "has not established why her husband did not file a Form I-130 earlier." (Id.) However, the relevant inquiry is whether there is "a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). That Petitioner's husband could have filed a Form I-130 earlier does not change the fact that after Petitioner's initial bond hearing, a Form I-130 was in fact filed. Accordingly, the Court recommends finding that the IJ did not apply the correct legal standard and thus, it was an abuse of discretion for the IJ to deny Petitioner's request for a second bond hearing pursuant to 8 C.F.R. § 1003.19(e) based on a determination that Petitioner had not established why her husband did not file a Form I-130 earlier.[3] See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("Under an abuse of discretion standard, 'we cannot reweigh evidence ... [but] can [only] determine whether the [IJ] applied the correct legal standard.'" (last alteration added) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Based on the foregoing, the Court recommends finding that Petitioner is entitled to relief on this ground.[4]

**E. Substantive Due Process**

In Count Three, Petitioner asserts that continued detention has become excessive and punitive, in violation of the Fifth Amendment. (ECF No. 1 at 16–17.) "As an initial matter, the

---

[3] In so concluding, the Court does not make a determination with respect to whether the filing of a Form I-130 and/or any of Petitioner's supplemental evidence presented in her request for a second bond hearing establishes "a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

[4] In light of this conclusion, the Court declines to address Petitioner's claim that the IJ's refusal to consider Petitioner's supplemental evidence rendered Petitioner's custody proceedings constitutionally inadequate.

mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746 (1987) (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

This Court has previously looked at the following three factors to determine whether an immigration detainee subject to prolonged detention is entitled to relief under the Fifth Amendment's substantive due process clause: "(1) length of detention and whether it is excessive in relation to its regulatory purpose; (2) evidence supporting the determination that detention is warranted to prevent flight risk or community danger; and (3) conditions of confinement." Shafaq v. Warden, California City Corr. Facility, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *5 (E.D. Cal. June 22, 2026) (citing Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *7–11 (E.D. Cal. June 2, 2025)).

1. Length of Detention

In the context of criminal pretrial detention, the Ninth Circuit has observed, "It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). Torres held that the twenty-one-month detention due to the COVID-19 pandemic and related courthouse closures did not violate due process, but the Ninth Circuit "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of

set of circumstances, due process does impose some limit.”)). In the immigration detention context, the Ninth Circuit has stated that “[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months.” Diouf v. Napolitano, 634 F.3d 1081, 1092 n.13 (9th Cir. 2011).

Here, Petitioner has been detained for five months. Accordingly, the Court recommends finding that the length of detention does not weigh in favor of Petitioner. See Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008) (upholding immigration detainee’s detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit); Shafaq, 2026 WL 1785249, at *8 (“Petitioner's detention of twenty-one months is not excessively prolonged to find a substantive due process violation.”); Espinoza, 2025 WL 1556590, at *10 (“Based on the foregoing, the Court finds that Petitioner's thirty-month detention, during which Petitioner received an individualized bond hearing before an immigration judge where the government had the burden of justifying his continued detention by clear and convincing evidence, without more, does not violate Petitioner’s substantive due process rights.”).

2. Danger and Flight Risk

With respect to danger and flight risk, the Court reviews the IJ’s determination for an abuse of discretion. Shafaq, 2026 WL 1785249, at *6. Under that standard, “we cannot reweigh evidence ... [but] can [only] determine whether the [IJ] applied the correct legal standard.” Martinez, 124 F.4th at 784, 785 (last alteration added) (internal quotation marks omitted) (quoting Konou, 750 F.3d at 1127).

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ “may” consider “include any or all of the following:”
>
> > (1) whether the alien has a fixed address in the United States; (2) the alien’s length of residence in the United States; (3) the alien’s family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien’s employment history; (5) the alien’s record of appearance in court; (6) the alien’s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien’s history of immigration violations; (8) any attempts by the alien to flee

> prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.* And "[t]he *Guerra* factor most pertinent to assessing dangerousness" is "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40).

Martinez, 124 F.4th at 783.

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771-72.

Martinez, 124 F.4th at 785.

Here, in denying bond, the IJ stated:

> Respondent is a significant flight risk such that no amount of bond or conditions would secure her future court appearances. Although Respondent recently married, an I-130 has not been submitted. The bona fides of the marriage have not been confirmed by USCIS. Of significance, absent from the record is a letter from her husband who is the purported potential petitioner. Respondent's husband also did not appear for Respondent's hearing. Although Respondent has submitted letters of support, the letters reference Respondent's fear of returning to Turkey. However, Respondent's filing in bond proceedings do not show that she has any fear of returning to Turkey, thus it remains unclear how well they know Respondent and the extent of their relationship with relationship. Respondent has not presented a stable residential history. Respondent was admitted to the U.S. in 2022 and has not presented sufficient documents to establish a stable residential history. Respondent also submitted W2s, however, absent from the record is any evidence of Respondent filing state or income tax returns in the U.S.

(ECF No. 6-3 at 1.)

An "IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on . . . evidence that 'bear little if any relevance' to Petitioner's risk of flight, while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts." Perez Velasquez v. Bondi, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (quoting Matter of Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976)). Here, the IJ properly considered whether Petitioner has a fixed address in the

United States, Petitioner's family and community ties, and employment history. Further, Petitioner does not assert that the IJ ignored favorable evidence proffered by Petitioner during her initial bond hearing. "Because the IJ . . . w[as] entitled to place some weight on the [factors] in their analysis . . . , the Court generally lacks jurisdiction to review whether they placed too much." Kharis v. Sessions, No. 18-CV-04800-JST, 2018 WL 5809432, at *8 (N.D. Cal. Nov. 6, 2018). Accordingly, the Court recommends finding that the second factor does not weigh in favor of Petitioner.

3. Conditions of Confinement

> "[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.' " *Id.* at 933–34 (alteration accepted) (first quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021) (first alteration added).

In Jones v. Blanas, 393 F.3d 918, (9th Cir. 2004), the Ninth Circuit held:

> With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.

Jones, 393 F.3d at 934. However, in Fraihat, which addressed whether ICE's COVID-19 policies reflected unconstitutional punishment under the Fifth Amendment, the Ninth Circuit observed that "*Jones* announced the foregoing comparative presumption in the context of a California state prisoner who was civilly detained and awaiting proceedings under California's Sexually Violent Predator Act" and "Plaintiffs have not identified authority from this Court extending *Jones*'s presumption to the context of federal immigration detainees." Fraihat, 16 F.4th at 648. The Ninth Circuit further observed that there is "no support in our cases for applying *Jones*'s presumption about comparative 'conditions' of confinement to the government's continued *ability* to confine

persons pursuant to lawful authority." Id. at 649. Although Fraihat "assum[ed] without deciding that it would be appropriate to invoke that presumption in the immigration context," the Court declines to invoke the presumption here because, as noted by the Ninth Circuit, "different government interests are at stake" in the immigration context. Fraihat, 16 F.4th at 648.

The petition states:

> Before detention, Petitioner was prescribed Fluoxetine (Prozac) and Mirtazapine and had been taking those medications regularly to manage her mental-health condition.
>
> After her arrest and repeated transfers among detention facilities, Petitioner experienced repeated interruptions in access to prescribed medication and inconsistent medical and mental health treatment. The repeated denial of access to prescribed medication, together with prolonged restraints and constant transfers, caused severe psychological deterioration.
>
> As a result, Petitioner suffered worsening anxiety, panic attacks, crying spells, sleep disruption, emotional instability, and severe psychological distress. Petitioner was also repeatedly transferred between facilities in restraints over prolonged periods of time, substantially worsening her emotional condition and reinforcing the punitive nature of her confinement.

(ECF No. 1 at 16–17.)

In Shafaq, this Court found "the conditions of confinement do not significantly weigh in Petitioner's favor" where the petitioner was diagnosed with an inguinal hernia, his scheduled surgery was canceled, and he submitted a letter from a doctor stating that if left untreated, the herniated abdominal contents may become trapped and compromise blood supply to the entrapped tissue leading to tissue death, and that, if not properly managed, the hernia could result in bowel obstruction, perforation, sepsis, and even death. Shafaq, 2026 WL 1785249, at *9. The Court stated that "[a]lthough Petitioner's inadequate access to medical care is deeply concerning, the facts in the record do not rise to the level of a constitutional violation necessitating Petitioner's immediate release." particularly "given that [Petitioner] is a member of a provisionally certified class of persons in CCDF custody bringing claims under the Fifth Amendment related to the conditions at CCDF."[5] Id. at *10 (internal quotation marks and

[5] The provisional *Ruiz* Injunction requires, among other things, that the government provide "constitutionally adequate health care" at CCDF including "continuity of medical care upon intake and thereafter, including timely completion of active medical orders, access to scheduled provider appointments, and consistent provision of medication; timely access to prescribed medications;

citation omitted). See Guillermo M.R. v. Albarran, No. 25-CV-05436-RFL, 2026 WL 1486580, at *5 (N.D. Cal. May 27, 2026) (finding that discontinuation of one previously prescribed psychotropic medication, change in dosage and frequency of another, and extremely limited counseling sessions resulting in "instrument-validated psychological deterioration across all assessed domains—PTSD, depression, anxiety, panic disorder, and substance use recovery" "do not yet rise to the level of a constitutional violation necessitating . . . release"). Accordingly, the Court recommends finding that the conditions of confinement factor does not weigh in favor of Petitioner.

On balance of all three factors, the Court recommends finding that Petitioner is not entitled to relief on the substantive due process claim.

**F. Appropriate Remedy**

Having found that it was an abuse of discretion for the IJ to deny Petitioner's request for a second bond hearing pursuant to 8 C.F.R. § 1003.19(e) based on a determination that Petitioner had not established why her husband did not file a Form I-130 earlier, the Court recommends that Respondents be directed to provide Petitioner with a determination, consistent with this Court's conclusion, before an immigration judge of whether Petitioner is eligible for a second bond hearing pursuant to the requirements of 8 C.F.R. § 1003.19(e). See Lopez v. Warden, California City Immigr. Processing Ctr., No. 1:26-CV-04846-DAD-SCR, 2026 WL 1999123, at *2 (E.D. Cal. July 10, 2026).

**III.**

**RECOMMENDATION & ORDER**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED IN PART on Count One with respect to the erroneous denial of a second bond hearing pursuant to 8 C.F.R. § 1003.19(e); and

---

and a responsive 'sick call' request system." *Id.* at 3. An external monitor has been appointed to ensure compliance.
Guillermo M.R. v. Albarran, No. 25-CV-05436-RFL, 2026 WL 1486580, at *5 (N.D. Cal. May 27, 2026).

2. Respondents be directed to provide Petitioner with a determination, consistent with this Court's conclusion, before an immigration judge of whether Petitioner is eligible for a second bond hearing pursuant to the requirements of 8 C.F.R. § 1003.19(e).

Further, Petitioner's motion to expedite (ECF No. 8) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 4, 2026**

STANLEY A. BOONE
United States Magistrate Judge